United States District Court<br>For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Joe Hand Promotions, Inc., | NO. C 10-04177 JW |
|        Plaintiff,<br>  v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| Sean Paul Croce d.b.a.<br>Croce's East Coast Eatery, et al., | |
|        Defendants. | |

## I. INTRODUCTION

Joe Hand Promotions, Inc. ("Plaintiff") brings this action against Sean Paul Croce and Croce's Eatery, Inc., d.b.a Croce's East Coast Eatery ("Defendant") alleging violations of 47 U.S.C. §§ 605 and 553; conversion; and violation of California Business and Professions Code §§ 17200, *et seq*. Plaintiff alleges that Defendants unlawfully intercepted and displayed the broadcast of an "Ultimate Fighting Championship" fighting match for which Plaintiff owned the exclusive television distribution rights.

Presently before the Court is Plaintiff's Motion for Default Judgment.[1] The Court conducted a hearing on April 4, 2011. Based on the papers submitted to date and oral argument, the Court GRANTS Plaintiff's Motion for Default Judgment.

---

[1] (Notice of Application and Application for Default Judgment by the Court, hereafter, "Application," and Memorandum of Points and Authorities in Support of Plaintiff's Application for Default Judgment by the Court, hereafter, "Motion," Docket Item No. 12.)

## II. BACKGROUND

**A.  Factual Allegations**

In a Complaint filed on September 16, 2010, Plaintiff alleges as follows:

Plaintiff is a Pennsylvania corporation with its principal place of business in Feasterville, Pennsylvania. (Complaint ¶ 6, Docket Item No. 1.) Defendant is the owner and operator of Croce's East Coast Eatery in Monterey, California. (Id. ¶ 7.) Plaintiff was granted the exclusive nationwide television distribution rights to "Ultimate Fighting Championship 103: Rich Franklin v. Vitor Belfort" ("the Program"), a September 19, 2009 closed circuit telecast covering the main event and all under-card bouts and commentary. (Id. ¶ 10.) Plaintiff entered into sublicensing agreements that gave various commercial entities (*e.g.* hotels, casinos and bars) the rights to publicly exhibit the Program. (Id. ¶ 11.)

With full knowledge that the Program was not to be intercepted, received, published and exhibited by an unauthorized entity, Defendant intercepted and displayed the Program at the time of its transmission at Croce's East Coast Eatery in Monterey, California. (Complaint ¶ 13.) Defendant's unauthorized interception and exhibition of the Program was for the purpose of commercial advantage or private financial gain. (Id. ¶ 14.)

On the basis of the allegations outlined above, Plaintiff alleges four causes of action: (1) Violation of 47 U.S.C. § 605; (2) Violation of 47 U.S.C. § 553; (3) Conversion; and (4) Violation of California Business and Professions Code §§ 17200, *et seq.*[2]

---

[2] Plaintiff's Motion does not make any claim for relief under California Business and Professions Code §§ 17200, *et seq*. Since Plaintiff appears to have abandoned this claim, the Court will not consider it in its determination of Defendant's liability and damages. Further, Plaintiff refers to § 553 in its Motion but sets forth no grounds on which the claim is based. In addition, the declarations and memorandum in support of the Motion request only statutory damages under § 605 and compensatory damages under state common law conversion. (See Docket Item No. 12 and attachments.)

2

**B.	Procedural History**

Plaintiff filed its Complaint on September 16, 2010.  (See Docket Item No. 1.)  On December 2, 2010, Defendant was served with the Summons and Complaint pursuant to Fed. R. Civ. P. 4(e)(2)(B).  (See Docket Item Nos. 8, 9.)  On January 6, 2011, the Clerk of Court entered default against Defendant.  (See Docket Item No. 11.)

Presently before the Court is Plaintiff's Motion for Default Judgment.

### III.  STANDARDS

Pursuant to Fed. R. Civ. P. 55(b)(2), a party may move the court for an entry of default judgment.  The grant of a default judgment is within the discretion of the court.  Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986).  In the Ninth Circuit, the district court must consider which of seven factors supports the entry of a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

### IV.  DISCUSSION

Plaintiff moves the Court for an entry of default judgment against Defendant, seeking statutory damages under 47 U.S.C. §§ 605(e)(3)(C)(i)(II) & (C)(ii) and compensatory damages under state common law conversion.  (Motion at 6, 9, 15.)

**A.	Default Judgment**

The decision to grant or deny a default judgment under Fed. R. Civ. P. 55(b) is within the discretion of the Court.  See Eitel, 782 F.2d at 1471-72.  Although there is strong public policy favoring decisions on the merits, it is only one factor among several to be considered.  Thus, the Court examines whether, under the other Eitel factors, default judgment is appropriate in this case.

3

First, Defendant has failed to defend the action or otherwise communicate with the Court. Thus, Defendant has made no showing of excusable neglect. If Plaintiff is not granted default judgment, it will not be able to otherwise recover its costs for its purchase of the exclusive distribution rights to the Program or obtain judgment. The Court finds that Defendant's lack of excusable neglect, measured against the possible prejudice to Plaintiff, favors default judgment.

Second, once the Clerk of Court enters default, all well-pled allegations regarding liability are taken as true except as to the amount of damages. Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Here, the Clerk of Court entered default on January 6, 2011. (See Docket Item No. 11.) Upon review of Plaintiff's Complaint, the Court finds that Plaintiff has adequately alleged a cause of action under 47 U.S.C. § 605.[3] Plaintiff has also adequately alleged a pendent state cause of action for conversion. Thus, the merits of Plaintiff's claim are deemed valid. Since the allegations are taken to be true, there is no dispute concerning material facts. Therefore, these factors favor granting default judgment.

With respect to the sum of money at stake, a large amount of money generally weighs against granting default judgment. See Eitel, 782 F.2d at 1472. Here, Plaintiff seeks $111,200 in damages. (Application ¶ 5.) This amount is not so large as to outweigh the other five Eitel factors that favor a grant of default judgment. Moreover, the Court has discretion to award a lesser amount under § 605.

---

[3] Generally, the Ninth Circuit has interpreted § 605 to apply where radio or satellite, rather than cable, transmissions have been intercepted. See, e.g., California Satellite Sys. v. Seimon, 767 F.2d 1364 (9th Cir. 1985). "A signal pirate violates [§] 553 if he intercepts a cable signal, [and] violates [§] 605 if he intercepts a satellite broadcast." J & J Sports Productions, Inc. v. Manzano, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008). However, "where there is liability because the defendant has defaulted, as is the case here, courts generally award damages only under § 605." J & J Sports Productions, Inc. v. Medinarios, No. 08-0998, 2008 WL 4412240, at *1 (N.D. Cal. Sept. 25, 2008) (citing Kingvision Pay-Per-View, Ltd. v. Backman, 102 F. Supp. 2d 1196, 1197 n.1 (N.D. Cal. 2000)). Plaintiff alleges that Defendant violated both § 553 and § 605 by intercepting Plaintiff's closed circuit fight, but contends in its Motion that without an opportunity to conduct discovery, Plaintiff cannot know the exact means of transmission or interception. (Motion at 3.) Further, Plaintiff moves only for default judgment on its § 605 claim. Under these circumstances, the Court finds it appropriate to analyze Plaintiff's § 605 claim rather than its § 553 claim.

4

In sum, the Court finds that the Eitel factors weigh in favor of granting default judgment. Accordingly, the Court GRANTS Plaintiff's Motion for Default Judgment.

**B.     Remedy**

   **1.     Statutory Damages**

Plaintiff contends that it is entitled to the maximum statutory damages, $110,000 total, based on a willful violation of § 605.  (See Motion at 4.)

Under § 605, an aggrieved party "may recover an award of statutory damages for each violation of subsec[tion] (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).  If the "court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation of subsection (a)." 47 U.S.C. § 605(e)(3)(C)(ii). In the context of default judgment, the mere assertion that defendants acted willfully is insufficient to justify enhanced damages. Backman, 102 F. Supp. 2d at 1198 (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977)).  However, courts may grant enhanced damages on default judgment if there is evidence of multiple violations, an intent to profit from the violation, and actual profit derived from the violation. Id. at 1198-99.  Courts have wide discretion in determining the amount of statutory damages to be awarded. DirecTV Inc. v. Le, 267 Fed. Appx. 636, 636 (9th Cir. 2008) (citing Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984)) (affirming denial of statutory damages under a § 605 default judgment).

Generally, courts in this district have awarded damages of less than $10,000 under facts similar to this case. See, e.g., Medinarios, 2008 WL 4412240 (N.D. Cal. Sept. 25, 2008) (awarding $1,000 in statutory damages under § 605, and $5,000 in enhanced damages under § 605); J & J Sports Productions, Inc. v. Miranda, No. 09-1037, 2009 WL 3837273 (N.D. Cal. Nov. 16, 2009) (awarding $2,500 in damages, $847.83 in attorney fees and $1,025 in costs).  Indeed, "[c]ourts in this district have considered several cases involving pirating of closed-circuit sports broadcasts and,

5

absent a showing of egregious wrongdoing, generally have awarded damages slightly over the statutory minimum." Universal Sports Network v. Jimenez, No. 02-2768, 2002 WL 31109707, at *1 (N.D. Cal. Sept. 18, 2002). However, when a defendant has been found liable for a prior violation of § 605, more substantial damages have been awarded. J & J Sports Productions, Inc. v. Montecinos, No. 09-2604, 2010 WL 144817 (N.D. Cal. Jan. 11, 2010) (awarding $5,000 in statutory damages under § 605, $10,000 in enhanced damages under § 605, and $3,750.00 for conversion).

Here, Plaintiff contends that Defendant is a repeat offender.[4]  Upon review, however, the Court finds that Plaintiff has not provided any evidence that Defendant is a multiple offender for the purpose of a damages award under § 605. Rather, the Court finds that the additional action against Defendant to which Plaintiff refers was dismissed by the Court for lack of process.[5] Plaintiff submits evidence that Defendant displayed the Program on three televisions to about one hundred-twenty-five patrons in a restaurant with a capacity of one hundred-fifty people.[6]  There was no cover charge to enter Defendant's restaurant, and there was no increase in the price of food or beverages to profit from patrons viewing the fight. (Id.) Thus, in light of the evidence presented, the Court awards Plaintiff $1,000 in statutory damages for violation of § 605 and no enhanced damages.

Accordingly, the Court awards Plaintiff $1,000 for Defendant's violation of § 605.

**2.  Attorney Fees and Costs**

Plaintiff requests attorney fees and costs under § 605.[7]  (Application ¶ 6.) Counsel submitted a declaration outlining Plaintiff's total costs in this matter as well as Plaintiff's billable attorney fees. (See Docket Item No. 14.) Upon review, the Court finds it appropriate to award Plaintiff attorney

---

[4] (Supplemental Declaration of Thomas P. Riley in Support of Plaintiff's Application for Default Judgment by the Court ¶ 4, Docket Item No. 12-4.)

[5] (See J&J Sports Productions, Inc. v. Sean Paul Croce, et al., No. 10-4176 JW, Docket Item No. 10.) The Court admonishes Plaintiff for inaccurately citing a case that was dismissed for failure to prosecute in support of a claim for multiple violations. Such conduct is borderline sanctionable pursuant to Rule 11.

[6] (Declaration of Affiant at 1, hereafter, "Affiant Decl.," Docket Item No. 12-3.)

[7] Where liability has been established under § 605, recovery of full costs and attorney fees to the prevailing aggrieved party is mandatory. 47 U.S.C. § 605(e)(3)(B)(iii).

6

fees and costs related to maintaining this action. Based on counsel's declaration, the Court awards Plaintiff attorney fees in the amount of $988.73 and costs in the amount of $1,115.00. (See id.)

**3.    Conversion**

Plaintiff seeks $1,200 in damages for its conversion claim. (Motion at 15.) Damages for conversion must be based on the value of the property at the time of the conversion. See Krueger v. Bank of America, 145 Cal. App. 3d 204, 215 (Cal. Ct. App. 1983). Here, Defendant's venue had a capacity of approximately one hundred-fifty people. (Affiant Decl. at 1.) The fee to license the Program to a venue with up to a one hundred-fifty person capacity was $1,200.[8] Since Plaintiff has adequately pleaded a conversion claim, the Court awards Plaintiff $1,200 in damages.

Accordingly, the Court awards Plaintiff $1,200 in compensatory damages for conversion.

**V.  CONCLUSION**

The Court GRANTS Plaintiff's Motion for Default Judgment. The Court awards Plaintiff a total Judgment of $4,303.73 which consists of: $1,000 in statutory damages under 47 U.S.C. § 605, $1,200 in compensatory damages for conversion, $1,115 in costs, and $988.73 in attorney fees. Judgment shall be entered accordingly.

Dated: April 4, 2011

JAMES WARE
United States District Chief Judge

---

[8] (Plaintiff's Affidavit in Support of Plaintiff's Application for Default Judgment by the Court, Ex. 1, Docket Item No. 12-5.)

**United States District Court**
For the Northern District of California

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Thomas Peter Riley TPRLAW@att.net

3
4  **Dated:  April 4, 2011**                                         **Richard W. Wieking, Clerk**

5                                                                              **By:      /s/ JW Chambers              **
6                                                                                     **Elizabeth Garcia**
                                                                                      **Courtroom Deputy**